**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Marc A. Earley,<br><br>　　Plaintiff<br><br>v.<br><br>NDOC, et al.,<br><br>　　Defendants | Case No.: 2:23-cv-01960-JAD-EJY<br><br>**Order Screening Complaint**<br><br>[ECF No. 1-1] |

Plaintiff Marc Earley brings this civil-rights action under 42 U.S.C. § 1983, claiming that his constitutional rights were violated when the doctors at Ely State Prison (ESP), Lovelock Correctional Center (LCC), and High Desert State Prison (HDSP) failed to treat his sarcoidosis—a painful autoimmune disease that causes tumors. Because Earley applies to proceed *in forma pauperis*,[1] I screen his complaint under 28 U.S.C. § 1915A. Having done so, I find that he has pled a colorable Eighth Amendment claim for deliberate indifference to a serious medical need. But before this case moves to the litigation track, I stay it for 90 days to allow the parties an opportunity to resolve this dispute through the court's mediation program.

**I.  Screening standard**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[2] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek

---

[1] ECF No. 1.
[2] *See* 28 U.S.C. § 1915A(a).

monetary relief from a defendant who is immune from such relief.[3] All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[4]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[5] In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[6] Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[7] but a plaintiff must provide more than mere labels and conclusions.[8] "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[9] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[10]

---

[3] *See* 28 U.S.C. § 1915A(b)(1)(2).

[4] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[5] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[6] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[7] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that *pro se* pleadings must be liberally construed).

[8] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[10] *Id.*

## II. Screening the complaint

### A. Earley's factual allegations

Earley suffers from sarcoidosis, which is a painful autoimmune condition that causes tumor growth throughout the body. As this is an uncommon condition, Earley has sought for years to get an appointment with a specialist who treats autoimmune disorders. The only treatment that alleviates his symptoms is steroid shots. For years, the doctors treating him, including Dr. Brown, Dr. John Doe 1 at LCC, Dr. John Doe 2 at HDSP, and Dr. Doe NDOC Medical Director, could have treated his condition with steroid shots, but they failed to do so because they did not have any knowledge of sarcoidosis. Although Dr. Brown ordered oral steroids for Earley in 2018, he told Earley not to take them, and Earley cannot take oral steroids. Dr. Brown did not send Earley to a specialist, and he moved him to LCC.[11]

In 2021, the NDOC sent Earley back to ESP, even though the high elevation at ESP made it difficult for him to breathe. Once there, Dr. Brown examined him again, but it appears that Earley did not receive any treatment and suffered for two years at ESP. After being transferred to LCC, Dr. Doe 1 told Earley that he would schedule an appointment with a specialist, but he failed to make the appointment. Earley states that Dr. Doe 1 smelled of alcohol on several occasions. From 2021 until 2022, Earley lost approximately 70 pounds.[12]

Prison officials transferred Earley to HDSP where Dr. Doe 2 ordered a PET scan. After the scan, Dr. Doe 2 told Earley that the scan showed that he had cancer. Thinking he was dying, Earley told his family about this diagnosis. However, after seeing an oncologist, Earley learned that he did not have cancer—Dr. Doe 2 misdiagnosed his sarcoidosis as cancer. Earley had

---

[11] ECF No. 1-1 at 3.

[12] *Id.* at 4.

another appointment with Dr. Doe 2, and Dr. Doe 2 wanted to send him to another specialist to take some sort of sample from his throat. Not seeing the point of the procedure, the specialist advised against taking the sample. Without proper treatment, Earley lost another ten pounds. At the time of the filing of the complaint, Earley still has not seen an autoimmune specialist. The tumors in Earley's body are painful and make everyday activities difficult. For example, wearing belly-chains is painful because Earley has tumors in his pelvis.[13]

Based on these allegations Earley raises three claims under the First, Second, Fourth, Eighth, Fourteenth, and Fifteenth Amendments. But these failure-to-treat-sarcoidosis facts best fit an Eighth Amendment deliberate-indifference-to-a-serious-medical-need cause of action (and Earley checks the box "medical care" in the complaint), I more accurately construe his complaint to allege such an Eighth Amendment claim. Earley seeks damages and injunctive relief.[14]

**B.    Earley states a colorable Eighth Amendment deliberate-indifference claim.**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."[15] A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate.[16] "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious

---

[13] *Id.* at 5.

[14] *Id.* at 6.

[15] *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

[16] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."[17]

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."[18] To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."[19] "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."[20] When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury.[21]

I find that Earley states a colorable Eighth Amendment claim for deliberate indifference to a serious medical need that is sufficient to survive this screening phase. Earley satisfies the deliberate-indifference standard's first prong because he alleges that his sarcoidosis has caused him severe pain for years and affects his ability to function. And he satisfies the second prong against Dr. Brown, Dr. Doe NDOC Medical Director, and Drs. Does 1 and 2 because he alleges that they were informed of his sarcoidosis over the years, yet they failed to provide him

---

[17] *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014).

[18] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).

[19] *Id.*

[20] *Id.* (internal quotations omitted).

[21] *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

5

treatment or access to a specialist. Therefore, this claim will proceed against Defendants Dr. Brown, Dr. Doe NDOC Medical Director, and Drs. Does 1 and 2, when Earley learns the identities of the Doe defendants.[22]

### C. Earley can't bring a negligence claim on these facts in federal court.

To the extent that Earley is seeking to raise a negligence claim based on the alleged inadequate treatment he received for his sarcoidosis, he fails. Under Nevada law, the State of Nevada has generally waived sovereign immunity for state tort actions in state court.[23] To sue the State of Nevada or a state employee, the plaintiff is required to sue the State of Nevada or appropriate political subdivision.[24] "In any action against the State of Nevada, the action must be brought in the name of the State of Nevada on relation of the particular department, commission, board or other agency of the State whose actions are the basis for the suit."[25]

With respect to *federal* court cases, the State of Nevada does not waive its immunity from suit conferred by the Eleventh Amendment.[26] Generally, the State of Nevada and arms of the state cannot be sued in federal court.[27] In *Stanley v. Trustees of California State University*, the

---

[22] Although the use of "Doe" to identify a defendant whose name is not known to the plaintiff is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the true identity of any "Doe" comes to light during discovery, Earley may move to substitute its true name at that time.

[23] Nev. Rev. Stat. § 41.031(1).

[24] Nev. Rev. Stat. §§ 41.031, 41.0337.

[25] *Id.* § 41.031(2).

[26] Nev. Rev. Stat. § 41.031(3).

[27] *See O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982) (holding that "Nevada has explicitly refused to waive its immunity to suit under the eleventh amendment . . . The Supreme Court has made it clear that section 1983 does not constitute an abrogation of the eleventh amendment immunity of the states").

Ninth Circuit held that 28 U.S.C. § 1367 does not abrogate state sovereign immunity for supplemental state law claims.[28]

To the extent that Earley is seeking to bring a state-law negligence claim, he must bring it in state court. So I dismiss it here without prejudice to his ability to file such a state-court action.[29]

### D. NDOC can't be sued in federal court.

Earley's claim against NDOC fails because the Eleventh Amendment to the United States Constitution immunizes arms of the state like NDOC from suit in federal court.[30] So I dismiss his claim against NDOC without prejudice but also without leave to amend because amendment would be futile.[31]

## III. Conclusion

IT IS THEREFORE ORDERED that the Clerk of the Court is directed to

- **FILE** the complaint (ECF No. 1-1); and
- **SEND** Earley a courtesy copy of the complaint.

IT IS FURTHER ORDERED that:

- **All claims against NDOC are dismissed without prejudice** to Earley's ability to bring suit against NDOC in state court. **The Clerk of Court is directed to TERMINATE NDOC as a party** to this case.

---

[28] *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133–34 (9th Cir. 2006).

[29] *See Hirst v. Gertzen*, 676 F.2d 1252, 1264 (9th Cir. 1982) (holding that, where Montana law deemed governmental entities indispensable parties in a state tort claim against a county employee, the federal court had no supplemental jurisdiction over the state tort claim if it had no jurisdiction over the indispensable party).

[30] *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007).

[31] *See Doe v. Lawrence Livermore Nat. Lab*, 131 F.3d 836, 839 (9th Cir. 1997).

7

- **This case proceeds only on the Eighth Amendment claim for deliberate indifference to a serious medical need against Defendant Dr. Brown (and against Dr. Doe NDOC Medical Director, and Drs. Does 1 and 2, when Earley learns their identities). All other claims and defendants are dismissed.**

Given the nature of the claim that the court has permitted to proceed, IT IS FURTHER ORDERED that **this action is STAYED for 90 days** to allow the parties an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay period and until the court lifts the stay, no other pleadings or papers may be filed in this case, and the parties may not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the court to do so. **I refer this case to the Court's Inmate Early Mediation Program** and will enter a subsequent order. Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General must file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay. If the parties proceed with this action, the court will then issue an order setting a date for defendants to file an answer or other response. Once an answer is filed, the court will issue a scheduling order setting discovery and dispositive motion deadlines. "Settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Earley's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

If the case does not settle, then the court will determine whether to grant Earley's *in forma pauperis* application. Earley will be required to pay the full $350.00 statutory filing fee for a civil action regardless of whether the court grants his *in forma pauperis* application. This fee cannot be waived, and the fee cannot be refunded once the court enters an order granting Earley's application to proceed *in forma pauperis*. If Earley is allowed to proceed *in forma pauperis*, the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b); if Earley is not allowed to proceed *in forma pauperis*, the full $350 statutory filing fee for a civil action plus the $52 administrative filing fee, for a total of $402, will be due immediately.

If any party desires to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation" no later than 21 days prior to the date set for mediation. The responding party will have seven days to file a response, and no reply may be filed. Thereafter, the court will issue an order, set the matter for hearing, or both.

If Earley needs an interpreter to participate in the mediation program, he must file a notice identifying the interpretation language and the need for the interpreter within 30 days from the date of this order.

IT IS FURTHER ORDERED that **the Clerk of Court is further directed to ADD** the Nevada Department of Corrections to the docket as an Interested Party and **ELECTRONICALLY SERVE** a copy of this order and a copy of Earley's complaint (ECF No. 1-1) on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the interested party on the docket. This does not indicate acceptance of service.

IT IS FURTHER ORDERED that **the Attorney General's Office must advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Interested Party** for the purpose of participation in the Early Mediation Program. No defenses or objections, including lack of service, will be waived because of the filing of the limited notice of appearance.

Dated: July 23, 2024

_____
U.S. District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Marc A. Earley,<br><br>        Plaintiff<br>v.<br><br>NDOC, et al.,<br><br>        Defendants | Case No.: 2:23-cv-01960-JAD-EJY<br><br>**Attorney General's Report of<br>Results of 90-Day Stay** |

**NOTE: This form must be filed only by the Office of the Attorney General.
The inmate plaintiff MUST NOT file this form.**

On _____, the Court issued its screening order stating that it had conducted its screening under 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies with that order.

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

_____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

_____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ No mediation session with a court-appointed mediator was held during the 90-day

stay, but the parties have nevertheless settled the case.  (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

\_\_\_\_  No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

\_\_\_\_  No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

\_\_\_\_  None of the above five statements describes the status of this case.  Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

* * * * *

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

\_\_\_\_  The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*).  (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

\_\_\_\_  The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

\_\_\_\_  The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

\_\_\_\_  None of the above three statements fully describes the status of this case.  Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Signature:  _____

Name:  _____

Phone #:  _____

Email:  _____